UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANDREW YOUNG,                                                          Plaintiff,

v.                                                    Civil Action No. 3:18-cv-P173-DJH

KENTUCKY STATE REFORMATORY et al.,                      Defendants.

\* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Andrew Young filed this *pro se* 42 U.S.C. § 1983 action. Because Plaintiff is a prisoner suing government officials, the amended complaint (Docket No. 5)[1] is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, this case will be dismissed.

### I. STATEMENT OF FACTS

Plaintiff's amended complaint is nearly 50 pages long, most of it single-spaced. Plaintiff is a convicted prisoner housed at the Kentucky State Reformatory (KSR). He names 22 KSR employees in their individual capacities as Defendants as follows: Dr. Kristen Schramm, Sonja Tapia, Lee Ann Keller, Anna Valentine, John Grievous, Sgt. Jeremy Ball, Capt. Michael Williams, Kimberly Thompson, Lt. Jay Hawkins, Capt. David Rohmann, Everett Thomas, Phillip Campbell, Lt. Jayne Hogan, Aaron Smith, Betsy Ramey, Aimee Mihalyon, Brittany Craig-Kramer, Dr. Laura Moore, Dr. Stephanie Roby, Dr. Maureen Khalil, Dr. Donna Smith, and Dr. Tom Morton. He also names as Defendants Correct Care Solutions (CCS) and the Kentucky Department of Corrections (KDOC).

---

[1] Plaintiff originally filed his complaint on his own paper. Therefore, the Court ordered him to submit his complaint on the Court-approved complaint form, and Plaintiff did so.

Plaintiff states that he is a "documented mentally ill inmate." He alleges that in July 2017, Defendant Schramm, KSR psychologist, agreed to let a friend of Plaintiff's into Defendant Schramm's "Phoenix" program so his friend could "'get some help for himself too'" in exchange for information from Plaintiff regarding illegal activity in KSR's "yard." He alleges that in doing so Defendant Schramm showed deliberate indifference to his mental illness in violation of the Eighth Amendment.

Plaintiff next alleges that when he met with Defendant Schramm "multiple times for psychological services," she only "sat in silence" while Plaintiff expressed "many complaints . . . regarding threats from staff members, health problems, illegitimately prescribed medications, medical's refusal to do laboratory tests, and general apathy from both mental health and medical services at KSR[.]" He also alleges that Defendant Schramm showed deliberate indifference to his mental health and medical needs "by refusing [Defendant] Keller's recommendation [for] Dr. Schramm [to] reevaluate [Plaintiff]." He explains that Defendant Keller is a psychiatric nurse.

Plaintiff's next allegations arise out of a September 2017 psychiatrist appointment. He states that on September 22 he arrived at the out-patient services office for his scheduled appointment and registered with Defendant Tapia, the secretary, who directed Plaintiff to an office where he has met "many psychiatric advisers many times." He states that "[w]ell into what is believed to be a private psychiatric session" *via* teleconference on a laptop computer with Defendant Keller he noticed that Defendants Keller and Tapia were having a "chat room" conversation which was derogatory in nature about his "private psychiatric conversation." According to Plaintiff, Defendants were posting their conversation on the laptop monitor unaware that he could see them.

2

Plaintiff states that he left out-patient services and was *en route* to his dormitory when his name was called out on the PA system with instructions to return to out-patient services. However, he states, that instead of returning to out-patient services as directed, he proceeded to go to his dormitory where Defendant Schramm's office is located. He states that he then told Defendant Schramm that his Health Information Portability and Accountability Act (HIPAA) rights had been violated and that Defendant Keller had not prescribed any medicine or other care during his psychiatric session. He states that Defendant Schramm told him to leave her office "without any assistance" because "she did not want to 'interstep.'" He states that Defendant Schramm refused to report his HIPAA violation and instead turned him over to security.

Plaintiff alleges that Defendant Grievous, who was working security, escorted Plaintiff back to out-patient services where, according to Plaintiff, Defendant Tapia proceeded to "threaten, cuss, and scream derogatory remarks . . . and promised a 'world of hurt for reporting'" that his HIPAA rights were violated.

The events of September 22, 2017, resulted in Plaintiff being taken to segregation. Along the way, he encountered Defendant Rohman, who Plaintiff informed that he was wrongfully being taken to segregation and that his HIPAA rights were being violated but received no help. Once there, he requested and was granted an "'admit'" phone call to his mother. He states that he asked his mother to contact the warden. Plaintiff also states that he was taken to the segregation nurse's station where a nurse took his vital signs and helped him fill out a sick-call slip stating that he wanted to see Dr. Tanya Young immediately to report ethics violations by Defendants Tapia and Keller. He states that Defendants Williams and Ball took his statement at that time. He alleges that both of these Defendants failed to seize and investigate evidence related to the incident.

Plaintiff states that he was in segregation from September 23 to 27, during which time Plaintiff alleges that Defendant Tapia "made good on her 9-22-17 'world of hurt' promise." He states that during this time he suffered from hopelessness and despair and tried every method he could imagine to commit suicide. He also alleges that during this time he was not provided a grievance form, despite his requests.

Plaintiff alleges that when he was released on September 27, he was read a disciplinary report charging him with destroying property. He states that he was referred to an adjustment committee for prosecution of tampering with safety/security/locking devices based on Defendant Hawkins' review of the write-up against him.

Plaintiff next alleges that on October 19, 2017, he filed a confidential health care grievance requesting his HIPAA rights "to be inforced and protected" and to have Defendant Tapia's statement and the video of the September 22 incident investigated. He states that Defendant Thomas, the grievance coordinator, forwarded his grievance to Defendant Campbell, who deemed it not grievable because it was related to a disciplinary action. Plaintiff alleges that Defendant Thomas violated HIPAA by giving his health care grievance to a non-health care employee and violated his Fourteenth Amendment due-process rights because, at the time the disciplinary report was made, Defendant Thomas was actually the "reporting employee" but had since become the grievance coordinator who "purposely [did not give the] healthcare grievance to proper healthcare personnel."

Plaintiff also alleges that Defendant Campbell violated his HIPAA rights and his Fourteenth Amendment due-process rights because the grievance he filed did not mention a disciplinary report or an adjustment committee hearing and because Defendant Campbell failed to forward the grievance to appropriate health care personnel for review.

Plaintiff's adjustment committee hearing was held on October 27, 2017. Plaintiff alleges that he was not allowed to call any witnesses or present any documents as evidence. Plaintiff states that Defendant Hogan did not allow Plaintiff to give his personal account of the events and violated his Fourteenth Amendment rights by convicting Plaintiff based solely on the word of Defendants Tapia and Young. He also alleges that Defendant Schramm violated his Fourteenth Amendment due-process rights by refusing to testify at the hearing.

Plaintiff states that he appealed but that Defendant Aaron Smith concurred with the adjustment committee. Plaintiff alleges that, in concurring despite flagrant violations, Defendant Aaron Smith violated his due-process rights.

Plaintiff also alleges that Defendant Keller violated his constitutional rights by placing a fraudulent accusation in his mental health file regarding the September 22 incident.

Plaintiff alleges that in his last meeting with Defendant Schramm on February 16, 2018, he requested her to report the HIPAA violations to an outside agency, but she declined. He also makes allegations involving not being able to get certain records through an open-records request, but those allegations do not involve any of the named Defendants.

Plaintiff next alleges that on March 2, 2018, he filled out a health care request form complaining of "constant fatigue, headache, body aches, swollen area under left jawbone, and also requests for bloodwork for Hep C, HIV, diabetes, vitamin levels, and HPV," but on March 8, 2018, when he saw Defendant Ramsey, she falsified a report of his symptoms and falsely "labeled Plaintiff . . . as a high risk homosexual." According to the complaint, she did schedule him for a thyroid ultrasound and blood work. He alleges that the ultrasound confirmed a thyroid nodule but that Defendant Ramsey refused to investigate it further. However, he also

states that on March 22, 2018, Defendant Ramsey did reorder "hepatic function test for hepatitis test," although she again did not schedule a test for HPV.

Plaintiff further alleges that although two tubes of blood were taken, only one was tested and "only partial blood test exam was performed, only HIV test conducted, and partial complete blood count performed." Plaintiff alleges that Defendant Ramsey was deliberately indifferent in that he told her of his exposure to HPV prior to his incarceration and that the virus is known to cause head and neck cancer in men which "often begins with a lump in the neck region." He also alleges that he reported sore throat and cough, which, according to him, are "consistent with HPV infection in its advanced stage."

Plaintiff next alleges that on March 29, 2018, in response to an open-records act request, he received his medical records during his incarceration. He alleges that at that time he learned that "potentially ten years of bloodwork results [were] missing from his medical records." He alleges that he has always been assured by "all psychiatrist responsible for his care" that his blood lab results were normal. Plaintiff alleges that psychiatric medication he was often prescribed required frequent blood work. He states, "Even with all these risks [Plaintiff's] blood was drawn but not actually processed and Plaintiff . . . was assured by physicians, health care providers, and psychiatrists and psychologists [that his] blood work results were normal and that he should . . . continue to take prescribed medications." He also makes more specific allegations as to perceived deficiencies in his treatment back to 2009.

As relief, Plaintiff requests monetary and punitive damages and injunctive relief.

# II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Deliberate-indifference claim against Defendant Schramm

Plaintiff alleges that Defendant Schramm showed deliberate indifference to his mental illness in violation of the Eighth Amendment when she agreed to let a friend into her "Phoenix" program so his friend could "'get some help'" in exchange for information from Plaintiff regarding illegal activity in KSR's "yard."

Plaintiff does not have a right to have his friend receive certain prison services. Further, to the extent that Plaintiff is alleging that Defendant Schramm took advantage of Plaintiff's mental illness, he alleges no harm to him for providing information. The Prison Litigation

Reform Act (PLRA) requires that any action for emotional injury suffered while in custody is barred unless the prisoner can show physical injury. 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Consequently, Plaintiff has failed to state a claim against Defendant Schramm for taking advantage of his mental illness.

Plaintiff also alleges that when he met with Defendant Schramm "multiple times for psychological services" she only "sat in silence" while Plaintiff expressed "many complaints . . . regarding threats from staff members, health problems, illegitimately prescribed medications, medical's refusal to do laboratory tests, and general apathy from both mental health and medical services at KSR[.]" Plaintiff does not explain how it was deliberate indifference for Defendant Schramm, a psychologist, to "sit in silence" while he expressed his multiple concerns about a myriad of topics.

To establish an Eighth Amendment violation related to medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). To rise to the level of an Eighth Amendment violation, a prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837-38. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* (citations omitted). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).

Plaintiff's disagreement with the manner in which Defendant Schramm reacted to his numerous complaints about a variety of topics during his psychological services meetings does not violate the Eighth Amendment. Plaintiff's disagreement with Defendant Schramm's therapeutic approach in allowing him to talk freely does not rise to the level of deliberate indifference. *See, e.g.*, *Hall v. Tyszkiewicz*, 28 F. App'x 493, 495 (6th Cir. 2002) ("Hall's disagreement with the defendants' medical judgment concerning the proper medication and medical aids for his condition does not evidence deliberate indifference."); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996).

Plaintiff also alleges that Defendant Schram showed deliberate indifference to his mental health and medical needs "by refusing [Defendant] Keller's recommendation [for] Dr. Schramm [to] reevaluate [Plaintiff]." It is not deliberate indifference for Defendant Schramm to refuse another KSR employee's recommendation to reevaluate Plaintiff. This refusal evidences a disagreement in opinion on how to treat Plaintiff and does not rise to the level of a constitutional violation. *See, e.g.*, *Pyles v. Fahim*, 771 F. 3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

9

**B. Claims arising out of September 22 incident and subsequent discipline hearing**

Plaintiff alleges that Defendants violated his right to due process concerning the disciplinary charge and conviction regarding the September 22 psychiatric appointment events by, among other things, not allowing him to testify, convicting him, and affirming the misconduct conviction on appeal.

A prisoner's ability to challenge a prison misconduct investigation and conviction depends on whether the actions implicated any liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id*. at 484-87.

Here, Plaintiff does not explain what if any punishment he received as a result of the disciplinary conviction. He does state that he was placed in segregation for four days prior to the adjustment committee hearing.

Courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an atypical and significant hardship. *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). The Sixth Circuit has held that mere placement in administrative segregation and placement for a relatively short period of time do not require the protections of due process. *See, e.g.*, *Bennett v. Smith*, 110 F. App'x 633, 634 (6th Cir. 2004) (holding that administrative segregation for 68 days does not give rise to a protected liberty interest because it does not constitute an atypical and significant hardship on the inmate). Thus, even if the Court

considers Plaintiff's four days in segregation as punishment, such punishment gives no rise to due-process protection.

Further, even if Plaintiff had shown a protected liberty interest giving rise to due-process protection, such as showing that he lost good-time credit, his claim would be barred.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Id*. at 486-87 (footnote omitted). Thus, if a ruling on a claim would necessarily render a plaintiff's continued confinement invalid, the claim must be dismissed because it is not cognizable until the challenged confinement has been remedied by some other process. *Id*. at 487.

The Supreme Court has extended the application of *Heck* to prison administrative proceedings, such as the one complained of by Plaintiff in this case, and clarified that a prisoner must show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence has been affected. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997). Nothing in the complaint suggests that the disciplinary action in question has been terminated in favor of Plaintiff. Therefore, Plaintiff's claims related to the initiation of the disciplinary charges, the hearing, and appeal will be dismissed.[2]

---

[2] These claims relate to allegations against Defendants Schramm, Keller, Tapia, Grievous, Hogan, Hawkins, Aaron Smith, Rohman, Williams, and Ball.

### C. Claim against Defendant Keller for false accusation

Plaintiff alleges that Defendant Keller violated his constitutional rights by placing a false accusation in his mental health file regarding the September 22 incident. Relevant caselaw establishes that Plaintiff fails to state a constitutional claim on the stated allegations. *See Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); *Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused."); *see also Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (finding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations").

### D. Deliberate-indifference claims against Defendants Valentine and Thompson

Plaintiff alleges that Defendant Valentine was deliberately indifferent when she prohibited him from receiving "psychological services after a traumatic event and then having him placed in segregation without mental evaluation or possible prescribed medication" and that Defendant Thompson also denied his request to see psychological services at his admittance into segregation. However, he also alleges that upon being taken to segregation he asked to and was allowed to call his mother and asked her to contact the warden and his vital signs were taken by a nurse, who also helped him fill out a sick-call slip. He alleges that this sick-call slip stated that

he wanted to see Dr. Young immediately to report ethics violations; he does not allege that he requested immediate psychological services. Thus, the allegations in Plaintiff's complaint undercut his assertion that he asked for and was prohibited from receiving psychological services since he states that he requested to see Dr. Young to report ethics violations.

Further, although Plaintiff alleged that he felt hopeless and desperate and tried to commit suicide while in segregation clearly he did not succeed in committing suicide and he does not complain of further suicide attempts. Nor does he allege that he suffered any physical harm while in segregation. Additionally, it is clear from the complaint that he has received mental health treatment for years. As already discussed, the PLRA requires the prisoner show physical injury, which is more than *de minimis* for an Eighth Amendment claim to proceed. § 1997e(e); *Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (dismissing case pursuant to § 1997e(e) where plaintiff alleged that he was "battered with spit and urine" on a regular basis by another inmate which caused him "fear, distress and mental anguish" but no physical injury). Consequently, the deliberate-indifference claims against Defendants Young and Thompson will be dismissed.

### E. Claim regarding being in segregation

To the extent that Plaintiff wishes to raise a separate constitutional claim regarding being in segregation, as already explained, segregation without loss of good-time credits fails to state a claim for a due-process violation under § 1983 altogether. A "plaintiff cannot show a denial of due process regarding his placement in segregation because a prisoner enjoys no liberty interest in remaining free from disciplinary segregation absent an atypical and significant hardship such as the loss of good time credits." *Cook v. Hills*, 3 F. App'x 393, 394 (6th Cir. 2001) (citing

*Sandin*, 515 U.S. at 485-87; *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995)). Consequently, Plaintiff has failed to state a claim regarding being in segregation.

### F. Claims related to HIPAA

Plaintiff alleges violations of HIPAA. Title II of HIPAA, codified at 42 U.S.C. § 1320a *et seq.*, was created to protect against the unauthorized disclosure of health records and information. *Gratton v. United Parcel Serv., Inc.*, No. 07-3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008). Private citizens have no standing to sue a covered entity for a violation of HIPAA. *Thomas v. Dep't of Health & Human Servs., Office for Civil Rights*, No. 17-6308, 2018 WL 5819471, at *2 (6th Cir. Aug. 24, 2018) ("HIPAA itself does not create a private right of action."); *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (per curiam) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *see also Carpenter v. Phillips*, 419 F. App'x 658, 658 (7th Cir. 2011); *Siegler v. Ohio State Univ.*, No. 2:11-cv-170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011). Plaintiff, therefore, fails to state a claim upon which relief may be granted under HIPAA, and those claims will be dismissed.

Nor does Plaintiff have an independent constitutional right to privacy of his psychiatric information in this context. The Sixth Circuit narrowly applies the right to informational privacy "only to interests that implicate a fundamental liberty interest." *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998). The Sixth Circuit has limited such a violation to only two instances: "(1) where the release of personal information could lead to bodily harm; and (2) where the information released was of a 'sexual, personal, and humiliating nature.'" *Townsend v. Reaume*, No. 1:13-cv-729, 2013 WL 3872173, at *4 (W.D. Mich. July 25, 2013) (internal citation omitted, quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)). The alleged disclosure of

14

Plaintiff's psychiatric information to other KSR staff does not meet either of these circumstances. *See Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) ("[U]nder our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."); *Sharber v. City of Louisville*, No. 3:16-CV-P526-DJH, 2017 WL 2221711, at *6 (W.D. Ky. May 19, 2017) (finding that the plaintiff's allegation that his privacy rights were violated "when Defendant MobileX USA x-ray technician discussed Plaintiff's x-ray results with [a prison guard] and when Defendant Nurse Greene allowed [another prison guard] around her medical cart" did not state a constitutional claim for violation of privacy); *Townsend*, 2013 WL 3872173, at *4 ("[E]ven assuming arguendo that protecting a prisoner's HIV status is a 'fundamental interest,' it does not follow that protection of all medical and/or mental health information rises to the same level.").

Finding no constitutional violation in the alleged disclosure of Plaintiff's mental health information, the Court will dismiss these claims.[3]

### G. Claims related to grievances

Plaintiff claims that his requests for a grievance form from Defendants Thompson and Campbell went unanswered. Prisoners, however, do not possess a constitutional right to a prison grievance proceeding. *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Furthermore, if the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Id.*; *O'Bryan v. Cty. of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977). Thus, all of Plaintiff's claims related to being denied a grievance form will be dismissed for failure to state a claim.

---

[3] These claims involve accusations against Defendants Schramm, Rohman, Khalil, Moore, Thomas, and Campbell.

### H. Deliberate-indifference claim against Defendant Ramsey

Plaintiff alleges that on March 2, 2018, he filled out a health care request form complaining of "constant fatigue, headache, body aches, swollen area under left jawbone, and also requests for bloodwork for Hep C, HIV, diabetes, vitamin levels, and HPV," but on March 8, 2018, when he saw Defendant Ramsey, a nurse practitioner, she falsified a report of his symptoms and falsely "labeled Plaintiff . . . as a high risk homosexual." According to the complaint, she did schedule him for a thyroid ultrasound and blood work. He alleges that the ultrasound confirms a thyroid nodule but that Defendant Ramsey refused to investigate it further. He also states that on March 22, 2018, Defendant Ramsey reordered "hepatic function test for hepatitis test," although she again did not schedule a test for HPV.

Plaintiff further alleges that although two tubes of blood were taken, only one was tested and "only partial blood test exam was performed, only HIV test conducted, and partial complete blood count performed." Plaintiff alleges that Defendant Ramsey was deliberately indifferent in not testing for HPV when he told her of his past exposure to HPV and that the virus is known to cause head and neck cancer in men often beginning "with a lump in the neck region." He also alleges that he reported sore throat and cough, which, according to him, are "consistent with HPV infection in its advanced stage."

Thus, according to the complaint, Defendant Ramsey ordered an ultrasound, blood work, and a test for hepatitis. Plaintiff merely evidences disagreement with Defendant Ramsey's treatment, which is insufficient to allege a deliberate-indifference claim. *See, e.g.*, *Hall v. Tyszkiewicz*, 28 F. App'x at 495; *Stanley v. Green*, No. 507CVP134-R, 2007 WL 4322595, at *2 (W.D. Ky. Dec. 10, 2007) ("As Plaintiff has received medical attention and his dispute is merely over the adequacy of treatment, he has failed to establish a federal constitutional violation

against Dr. Green/Greenman for opining that a surgical consult was not warranted."). This claim will be dismissed.

**I. Claims arising from review of medical records**

Plaintiff alleges that on March 29, 2018, he received his prison medical records. Plaintiff makes a number of claims based on his perceived shortcomings in his treatment as revealed by these records going back to 2009.

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-80 (1985). Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and . . . a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id*. at 183. Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

Here, although Plaintiff alleges that he received copies of his medical records on March 29, 2018, it appears that most of the claims he raises about his past medical treatment would have been obvious at the time. For example, he alleges that after leaving an appointment with Defendant Roby, a doctor of psychology, in 2012, he was awakened from sleep and locked in KSR's CPTU dorm for reasons unknown to him after eight years of clear conduct. Apparently, he recently learned from his medical records that Defendant Roby had reported that

17

Plaintiff had been acting oddly. But that does not change the fact that Plaintiff would have been aware in 2012 that he was being locked in CPTU for an unknown reason after eight years of clear conduct. Also, he complains that his medical records from 2012 show that Defendant Donna Smith had ordered additional anti-psychotic medication in the form of an injection and told Plaintiff that he would not be released from isolation until he was medicine compliant. However, Plaintiff offers no argument that he did not notice receiving an injection or being in isolation in 2012. The Court finds most of Plaintiff's claims based on his medical records to be time-barred.[4]

The possible exception to the time bar against his claims would be Plaintiff's claims that he was told over the years that his blood work was fine when, he claims, he now knows that blood testing was not done. He alleges that over the years "various staff have manipulated [him] into medical compliance by assuring all blood work is 'ok' even when never processed. Minimizing [his] complaints of chest pain with simple ECG baseline printouts." However, he also alleges that pages of his medical history were missing and does not explain why he thinks that the medical reports show that bloodwork was not processed even though he was told by medical personnel that his blood work was fine rather than that the blood test results were simply not included in his medical paperwork. The Court finds that Plaintiff's allegations are speculative and, therefore, insufficient to state a deliberate-indifference claim. *See Vickery v. Caruso*, No. 07-CV-13419, 2008 WL 4058717, at *3 (E.D. Mich. July 14, 2008) ("Construed in a light most favorable to plaintiff Vickery, Vickery's allegations are insufficient to raise his right to recovery against Dr. Burton on an Eighth Amendment claim of deliberate indifference resulting from the alleged denial of medical care above speculation[.]").

---

[4] The time-barred claims relate to allegations against Defendants Mihalyon, Moore, Roby, Khalil, Donna Smith, and Morton.

Plaintiff also states that 2012 psychological testing showed he had "low positive emotions and ideas of persecution" but that "aggression, psychoticism, deconstraint, and negative emotion/neuroticism . . . fell below the cutoff," yet Defendant Donna Smith prescribed more antipsychotic medication "despite Dr. Anderson's psychological testing which had ruled out any psychoticism." Even if the Court considers this claim not to be time-barred, a disagreement between Defendant Donna Smith and Dr. Anderson is not deliberate indifference. *See Pyles*, 771 F. 3d at 409.

### J. Claims against Defendant Craig-Kramer

Plaintiff alleges that Defendant Craig-Kramer violated HIPAA and showed deliberate indifference towards his request for an overview of his mental and medical health records.

As already discussed, Plaintiff has no private right of action under HIPAA. And because Plaintiff makes no allegations to support his contention that Defendant Craig-Kramer's treatment of his request for an overview of his mental and medical health records was deliberate indifference, Plaintiff fails to state a claim against this Defendant.

### K. Claims against Defendants CCS and KDOC

Plaintiff makes generalized allegations that Defendant CCS, the health-care provider at KSR, has employed staff who have been deliberately indifferent to Plaintiff's serious medical needs, violated HIPAA, and used KDOC staff to prevent him from filing grievances. As already discussed, Plaintiff has no rights related to HIPAA or filing grievances, and none of his more particularized allegations involving deliberate indifference rise to the level of a constitutional violation.

Plaintiff also alleges that these Defendants violated his Fourth Amendment right by "seizing" his mental and medical healthcare documents. However, a person generally only has a

Fourth Amendment expectation of privacy in documents that he owns or possesses. *United States v. Miller*, 425 U.S. 435, 440-42 (1976). The medical records at issue in this case were maintained and possessed by the prison, and therefore the disclosure of these records did not constitute a search for Fourth Amendment purposes. *Cooper v. Vinson*, No. 5:17CV-P10-TBR, 2017 WL 3452360, at *5 (W.D. Ky. Aug. 10, 2017) (finding that prisoner failed to state a Fourth Amendment claim regarding his prison medical records); *Thomas v. Carrasco*, No. 1:04-cv-05793-MJS, 2010 WL 4024930, at *4 (E.D. Cal. Oct. 13, 2010) (finding that the defendant's procurement of plaintiff's prison medical records without authorization did not constitute a search under the Fourth Amendment).

Accordingly, the Court finds that Plaintiff has failed to state a claim against Defendants CCS and KDOC.

### III. CONCLUSION

For the foregoing reasons, this action will be dismissed by separate Order.

Date: May 22, 2019

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
　　Defendants
　　General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4415.009

20